THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

FREDRIC S. BREIDENBACH, *and*
*all others similarly situated,*                  :

        Plaintiffs,                          :          Case No. 3:92-cv-184

        v.                                        :          Judge Walter H. Rice

IBEW LOCAL NO. 82, *et al.,*
                                  :

        Defendants.

---

DECISION AND ENTRY SUSTAINING MOTION FOR RELEASE OF FUNDS TO THE ESTATE OF PLAINTIFF AND FORMER CLASS REPRESENTATIVE FREDRIC S. BREIDENBACH (DOC. #195), MOTION FOR PAYMENT OF ATTORNEY FEES TO JAMES FLEISHER, COUNSEL TO PLAINTIFF CLASS (DOC. #197), AND MOTION TO ADOPT SETTLEMENT AGREEMENT (DOC. #198) OF ALL PARTIES; OBJECTIONS TO PROPOSED SETTLEMENT AGREEMENT (DOC. #198-1) ARE OVERRULED, THE PROPOSED SETTLEMENT AGREEMENT IS APPROVED AND SHALL BE FILED UPON SIGNATURE BY THE UNDERSIGNED; PLAN ADMINISTRATOR AND TRUSTEES SHALL EFFECT THE SETTLEMENT PURSUANT TO THE DEADLINES AND MECHANISMS SET FORTH IN THE AGREEMENT; THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO SHALL REMIT TWO HUNDRED THIRTY-TWO THOUSAND DOLLARS ($232,000.00), PLUS ANY ACCRUED INTEREST, TO HEIDI FREEMAN, ADMINISTRATRIX FOR THE ESTATE OF BREIDENBACH, WITHIN FOURTEEN (14) DAYS OF ENTRY; MR. FLEISHER SHALL FILE A LODESTAR CALCULATION WITH THE COURT WITHIN THIRTY (30) DAYS OF ENTRY; ANY OPPOSITION TO THE CALCULATION MUST BE FILED WITHIN FOURTEEN (14) DAYS THEREAFTER

---

Before the Court are the Motion for Release of Funds to the Estate of

Plaintiff and Former Class Representative Fredric S. Breidenbach (Funds Motion,

Doc. #195), Motion for Payment of Attorney Fees to James Fleisher, Counsel for

Plaintiff Class (Attorney Fee Motion, Doc. #197), and Joint Motion for Approval of Class Action Settlement Agreement. (Settlement Motion, Doc. #198). For the reasons set forth below, all three Motions are SUSTAINED, and the Objections to the Proposed Settlement Agreement (Doc. #198-1) are OVERRULED.

## I.     Factual Background and Procedural History

The undersigned must first acknowledge the unconscionable length of time which this case has been pending. The Court extends its deepest appreciation to parties and counsel for their efforts in achieving final resolution. The Court held an initial fairness hearing on a settlement agreement on December 18, 2008 (Minute Entry, Doc. #155), and the parties submitted a motion to adopt that settlement agreement on December 29, 2008 (Motion, Doc. #156), which this Court sustained on December 31, 2008, subject to regulatory approval. (Notation Order). The agreement provided that Defendants would deposit $232,000 with the Clerk of Court for the United States District Court for the Southern District of Ohio, to be paid to Breidenbach with interest upon final regulatory approval. (Doc. #156-1, PAGEID 153-54, § III). Meanwhile, the Trustee for Defendant International Brotherhood of Electrical Workers Local No. 82 ("Local") Joint Pension Fund ("Plan") would hold in escrow the contributions made by the Plaintiff class members to the Defined Benefit ("DB") plan, to be transferred to the Defined Contribution ("DC") plan upon ultimate approval of the settlement agreement. (*Id.* at PAGEID 150-51, §I.B).

2

Erin Sweeney submitted the agreement to the Internal Revenue Service ("IRS") for a private letter ruling from the agency in 2010; the IRS did not give final approval until October 29, 2020. (Compliance Letter, attached as part of Exhibit 1 to this opinion) Sweeney's final submission to the IRS contained the following language: "If an Electing Participant is in pay status under the DB Plan prior to the Transfer Date, the benefits already received will not be included in the DB Plan accrued benefits calculation." (Attachment to IRS Form 14568, p. 4, also attached as part of Exhibit 1 to this opinion). This language was consistent with that of the Report of the Independent Fiduciary for the Proposed Settlement, dated December 31, 2009: "For participants who have already begun receiving payments, the amount transferred will be reduced by the value of the benefits received before the transfer." (Report, p. 2, attached as Exhibit 2). In other words, if a DB Plan participant had received any funds from the DB Plan prior to his or her election to transfer to the DC Plan, the amount of money the participant already received in the DB Plan would be subtracted from the amount that would otherwise be due the participant in the DC Plan. This became known as the "clawback" or "offset" provision, and was necessary to avoid participants from receiving duplicate benefits, *i.e.*, "double-dipping" in the DB and DC Plans.

As Sweeney testified, "one of the important criteria that the Internal Revenue Service considered was the fact that the offset existed[.]" (Jun. 25, 2026, Tr., p. 27). Before approving the settlement agreement,

3

> The IRS had to satisfy itself that the Defined Benefit Plan would . . .
> retain its solvency in order to allow and still be maintained in the best
> interests of the participants and beneficiaries if these electors were
> allowed to make a decision to move from the Defined Benefit Plan to
> the Defined Contribution Plan.

(*Id.* at PAGEID 28).

On June 7, 2022, Breidenbach submitted a brief to the Court, wherein he alleged that Defendants had made substantive alterations to the agreement; specifically, Breidenbach argued that Defendants included the clawback provision for the first time, which neither he nor the Plaintiff class agreed to. (Memo., Doc. #178, PAGEID 283, citing Settlement Spreadsheet, Doc. #178-9). Breidenbach subsequently passed away, and on August 11, 2025, the Court convened an omnibus status conference. During that conference, Plaintiff class member Joseph Bawidamann stated that he agreed with Breidenbach's position that the clawback was not part of the settlement agreement. (Aug. 11, 2025, Tr., p. 28). Shortly thereafter, the Court issued orders appointing Fleisher as class counsel (Doc. #192) and Bawidamann as class representative. (Doc. #193). Fleisher subsequently indicated his agreement with counsel for Defendants that the settlement agreement previously approved by the Court was operative, and that the settlement agreement contained the offset or clawback provision. (Sept. 8, 2025, Tr., p. 3; Apr. 3, 2026, Tr., pp. 3-4).

On January 12, 2026, the parties jointly submitted the Settlement Agreement Motion. (Doc. #198). The settlement agreement submitted to the Court contained the following language:

4

> Those participants who were 100% participants in the Defined Contribution Plan as of May 31, 1989[,] will be permitted to make a one-time election to transfer from the Defined Benefit Plan into the Defined Contribution Plan the present value of the participants' accrued benefit **as of June 30, 2025,** payable at normal retirement age as of the date of transfer as provided in the last sentence of this paragraph.  The Trustees of the Defined Benefit Plan shall direct the Plan's Actuary to calculate the value of each eligible participant's transfer entitlement under the preceding sentence ~~as of June 30, 2025~~ and shall direct the Administrator to provide the Actuary with all necessary data to perform that calculation.  **In performing the calculation, the Actuary shall use the actuarial assumptions used for calculating the minimum funding requirements of the Defined Benefit Plan, including the 1994 Group Annuity Mortality Table and a 7.5% interest assumption.**

(Doc. #198-1, PAGEID 1526, § I.A (emphasis and alterations in original)).  Based on the attorneys' representations, the Court provisionally approved the settlement agreement on March 5, 2026, (Decision and Entry, Doc. #199), and set a FED.R.CIV.P. 23(e) fairness hearing for June 25, 2026.  (Order, Doc. #200, PAGEID 1533).

At the fairness hearing, counsel for the Breidenbach Estate, the Plaintiff class, and the Plan spoke universally in favor of the settlement agreement as presented and with the offset provision.  However, Bawidamann argued that "there was never a finalized document having full consent from the parties involved" (Jun. 25, 2026, Tr., p. 35), and reiterated his stance that there was no clawback provision in the document.  (*Id.* at p. 38).  He also stated that Breidenbach's estate "deserves every penny back that [Breidenbach] spent." (*Id.* at p. 39).  Plaintiff class member Nicholas Comstock termed the settlement agreement "a bribe being offered . . . in return for simply making this whole thing

5

go away" (*id.* at p. 44), and argued that the agreement containing a clawback was not approved in 2008 and was not presented to Local members for a final vote. However, Comstock conceded that "[i]f this settlement is not executed, we may begin this litigation over. In the end, if they do not take this stipend, they will all be dead before anyone gets anything." (*Id.* at p. 45). Finally, Plaintiff class member Scott Wolfe spoke, claiming that he was unaware of any clawback provision until receiving an April 26, 2026, letter from counsel for the Plan. (*Id.* at pp. 50-51).

The matter is now ripe for decision.

## II. Legal Standards

A class action case may not be settled until the district court conducts a hearing and "on finding that it is fair, reasonable, and adequate[.]" FED.R.CIV.P. 23(e)(2). The Court must consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

6

(D) the proposal treats class members equitably relative to each other.

*Id.*

Beyond those requirements, the United States Court of Appeals for the Sixth Circuit "and others have . . . deferred to the district court's traditionally broad discretion over the evidence it considers when it considers when reviewing a proposed class action settlement." *Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 636 (6th Cir. 2007) (collecting cases), *overruled on other grounds by M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427 (2015). The questions of fairness, reasonableness, and adequacy are assessed as of the time of the hearing. *See, e.g., Stewart v. Baptist Mem. Health Care Corp.*, No. 2:21-cv-2377, 2024 WL 4360602, *6 (W.D. Tenn. Sept. 30, 2024). A *de facto* trial on the merits is neither necessary nor appropriate. *Id.*, quoting *Edwards v. City of Houston*, 37 F.3d 1097, 1119 (5th Cir. 1994) (Parker, J., concurring), *vacated en banc on other grounds* at 78 F.3d 983 (5th Cir. 1996); *Mars Steel Corp. v. Continental Ill. Nat'l Bank and Trust Co. of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987).

### III. Analysis

#### A. Settlement Motion (Doc. #198)

The Court notes that the only objections raised with respect to approving the settlement agreement dealt with whether the clawback or offset provision existed in the agreement previously approved. While the provision providing for

7

offset could have been drafted more artfully or explicitly in the agreement, Sweeney's testimony[1] and her attachment to Form 14568, discussed above, leaves no doubt that such provision was in the agreement from the start.  Moreover, the undersigned cannot conceive of Defendants, their attorneys, or the IRS agreeing to forgo an offset, the absence of which could allow "double-dipping" by class Plaintiffs who had already received benefits.  Indeed, Sweeney testified that, without offset, the IRS's previous signoff on the agreement would be of no import, and that she would be forced to return to the IRS for further guidance and

---

[1] Sweeney's testimony was as follows:

I would just like to add that one of the important criteria that the Internal Revenue Service considered was the fact that the offset existed so that an individual would not be receiving the same dollars from the Defined Benefit Plan and the Defined Contribution Plan, and as I have advised the Court previously, that to the extent that the offset was not present, we would have to go back to the Internal Revenue Service to seek an additional guidance and review from the Internal Revenue Service.

When we requested that -- the Internal Revenue Service needed to be involved in this transfer because under the current code provisions, you can't actually just move dollars from one plan to another, even at an elector's request, and so the IRS had to satisfy itself that the Defined Benefit Plan would be—retain its solvency in order to allow and still be maintained in the best interests of the participants and beneficiaries if these electors were allowed to make a decision to move from the Defined Benefit Plan to the Defined Contribution Plan.

And so the Internal Revenue Service needed to make sure that the other participants in the Defined Benefit Plan wouldn't be hurt by the electors taking their dollars out of the Defined Benefit Plan, and so the Internal Revenue Service satisfied itself that because there was an offset, that the participants who stayed in the Defined Benefit Plan would not be harmed by the movement of the dollars from the Defined Benefit Plan to the Defined Contribution Plan.  And as I had mentioned in a brief hearing, we would have to—if ultimately there was a decision made to go back and relook at the offset issue, we would have to go back to the Internal Revenue Service and ask them if they would still agree to green-light this process if there was no offset.

(Jun. 25, 2026, Tr., pp. 27-29).

8

approval. Thus, the agreement previously approved in 2008 is operative, and benefits that flow therefrom are subject to offset.

With the validity of the agreement established, the Court must determine whether the settlement is fair, reasonable, and adequate at this time. FED.R.CIV.P. 23(e)(2). While the answer to this question, in retrospect, may have looked different when the case was filed in 1992, or even at the fairness hearing in 2008, the circumstances compel the Court to answer the Rule 23(e)(2) question in the affirmative in 2026. "[T]he costs, risks, and delay of trial and appeal[,]" Fed.R.Civ.P. 23(e)(2)(C)(i), are almost insurmountable. As discussed above, Comstock concedes that the alternative to settlement is for this matter to continue for several more years, during which time even more class members will likely pass away without ever getting the option to move from the DB to DC Plan. The best and most comprehensive relief available to the Plaintiff class is the submitted settlement agreement.

As to the distribution of relief, FED.R.CIV.P. 23(e)(2)(C)(ii), the Court commends Plan counsel for its comprehensive and effective methods of providing notice of settlement and deadlines for election to class members (Jun. 25, 2026, Tr., pp. 3-5), and is confident that he is capable of effecting the methods outlined in the Settlement Agreement. Accordingly, the Court concludes that the notice provided by Plan counsel was "the best notice that is practicable under the circumstances[.]" FED.R.CIV.P. 23(c)(2)(A). Further, the IRS's approval of the

9

agreement means there are no concerns regarding solvency once Plaintiff class members elect to transfer.

As to attorney fees, FED.R.CIV.P. 23(e)(2)(C)(iii), Fleisher must still submit a final lodestar calculation. However, he has been on the case for less than a year, and as of January 12, 2026, was only moving for payment of $25,000 of the $33,005.36 in costs and fees he had incurred as of December 31, 2025. (Doc. #197, PAGEID 1512; Fleisher Aff., Doc. #197-1, PAGEID 1516, ¶ 9). In light of his work in finalizing this equitable settlement for the class, his claimed fees, even if not final, are more than reasonable. FED.R.CIV.P. 23(e)(2)(A). Further, given the zealous representation of the class, first by Breidenbach and then Bawidamann, and the lengthy and arduous negotiations to produce the fair and equitable settlement, the Court has no doubt that the class representatives were adequate representatives and that the proposal is the product of an arm's-length-negotiation. FED.R.CIV.P. 23(e)(2)(A-B). Finally, the plain language of the settlement agreement treats the class members equally in terms of relief, and given that the strongest objection to the settlement came from the class representative, Bawidamann (Jun. 25, 2026 Tr., pp. 32-40), the Court has no concerns of preferential treatment for class representatives.

In light of the above, the Court is convinced that the proposed Settlement Agreement (Doc. #198-1) is the most "fair, reasonable, and adequate" outcome for the entire Plaintiff class and all parties at this time. Accordingly, the

10

Settlement Motion (Doc. #198) is SUSTAINED, and objections to the Settlement Agreement are OVERRULED.

**B.      Funds Motion (Doc. #195) and Attorney Fee Motion (Doc. #197)**

As detailed above, $232,000 has been held in an interest-bearing escrow account by the Clerk, payable to the Estate of Breidenbach upon resolution of this case.[2] As the settlement agreement has been approved and the case is terminated, the Funds Motion (Doc. #195) is SUSTAINED, and the Clerk shall release the funds and any interest in the account to Heidi Freeman as Administratrix of the Estate of Breidenbach.

In the Attorney Fee Motion, Fleisher states that "[w]ith leave of Court, I will cause a copy of an itemized statement to be submitted to the Court for *in camera* review." (Fleisher Aff., Doc. #197-1, PAGEID 1516, ¶ 8). The Court would appreciate the opportunity to review that statement and to make sure that he receives full compensation for his efforts, as the total costs and fees in his Affidavit is current only through December 31, 2025. (*Id.* at ¶ 9). Accordingly, the Attorney Fee Motion (Doc. #197) is SUSTAINED, and Fleisher shall submit a final lodestar calculation subject to the schedule below.

---

[2] In addition to class representative fees, the payment also resolves Breidenbach's personal-injury case against one or more of the Defendants. (Jun. 25, 2026, Tr., p. 54).

11

## IV.    Conclusion

For the foregoing reasons, the Funds Motion (Doc. #195), Attorney Fee Motion (Doc. #197), and Settlement Motion (Doc. #198) are SUSTAINED.  The proposed Settlement Agreement (Doc. #198-1) is APPROVED and shall be filed upon signature by the undersigned.  The Clerk of Court is directed to disburse the $232,000.00 in the escrow account, plus any interest accrued, to Administratrix Freeman within FOURTEEN (14) days of Entry.  Within THIRTY (30) days of Entry, Fleisher shall submit a final lodestar calculation, with an itemized statement of work submitted *in camera*, to account for all fees and costs he has incurred as Plaintiff class counsel; any opposition to the fee amount submitted by Fleisher shall be filed within FOURTEEN (14) days thereafter.  The Plan's Administrator and Trustee shall administer the settlement pursuant to the Settlement Agreement.

IT IS SO ORDERED.

July 1, 2026

WALTER H. RICE, JUDGE
UNITED STATES DISTRICT COURT

12